IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**CRYSTAL THOMAS,**
**o/b/o M.H.,**

    **Plaintiff,**

v.                                           Civil Action No. 3:14-cv-30986

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OPINION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11) and Brief in Support of Defendant's Decision (ECF No. 12). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for Supplemental Security Income (SSI) on behalf of a child under Title XVI of the Social Security Act. Both parties have consented to a decision by the United States Magistrate Judge.

### Background

Plaintiff, Crystal Thomas, on behalf of her daughter, Madason Denise Raeshell Holderby, (hereinafter Claimant), filed an application for children's SSI benefits on February 2, 2012. The application alleged a disability onset date of February 1, 2011. The claim was denied initially on May 2, 2012, and upon reconsideration on July 13, 2012. On August 8, 2012, Claimant requested a hearing before an Administrative Law Judge (hereinafter ALJ). The hearing was held on September 25, 2013, in Huntington, West

Virginia. Claimant's mother testified (Tr. at 29-48). By decision dated October 11, 2013, the ALJ determined that Claimant was not entitled to benefits (Tr. at 23). The ALJ's decision became the final decision of the Commissioner on October 28, 2014, when the Appeals Council denied Claimant's request for review (Tr. at 1-4). Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under the authority of the Social Security Act, the Social Security Administration has established a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled. 20 C.F.R. § 416.924(a) (2014). A child is disabled under the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

Under the regulations, the ALJ must determine whether the child is engaged in substantial gainful activity.[1] 20 C.F.R. § 416.924(b) (2014). If the child is, he or she is found not disabled. *Id.* § 416.924(a). If the child is not, the second inquiry is whether the child has a severe impairment. *Id.* § 416.924(c). An impairment is not severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." *Id.* If the child does not have a severe medically determinable severe impairment or combination of impairments, he is not disabled. If a severe impairment is present, the third and final inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of

---

[1] Substantial gainful activity for children is defined the same way it is defined for adults. The term substantial gainful activity (SGA) is used to describe a level of work activity and earnings that is both substantial and gainful.

2

the Administrative Regulations No. 4. *Id*. § 416.924(d). If the claimant's impairment meets or functionally equals the requirements of Appendix 1, the claimant is found disabled and is awarded benefits. *Id*. § 416.924(d)(1). If it does not, the claimant is found not disabled. *Id*. § 416.924(d)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the application date of February 2, 2012 (Tr. at 14). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of attention deficit hyperactivity disorder and learning disorder. (*Id*.) At the third and final inquiry, the ALJ concluded that Claimant's impairments do not meet or functionally equal the level of severity of any listing in Appendix 1. On this basis, benefits were denied. (*Id*.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they

3

cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

## Claimant's Background

Claimant was born on April 21, 2004. She was a "school-age child" on the onset date and at the time of the administrative hearing (Tr. at 14). On the date of the hearing, Claimant was in the fourth grade. Claimant cannot read, write, tell time or do math.

## The Medical Record

The Court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as it relates to Claimant's arguments.

## Claimant's Challenges to the ALJ's Decision

Claimant asserts that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate the credibility of Claimant's mother and fully develop Claimant's case (ECF No. 11). Defendant asserts substantial evidence supports the ALJ's finding that the allegations of Claimant's mother regarding M.H.'s symptoms were not entirely credible (ECF No. 12). Defendant avers that the ALJ reasonably relied upon medical source opinions in the record, therefore, the ALJ was not required to develop the record. Defendant asserts that Claimant has not proven that she is disabled under the Social Security Act

## Attention Deficit Hyperactivity Disorder

4

ADHD, Listing 112.11, is manifested by developmentally inappropriate degrees of inattention, impulsiveness and hyperactivity. The required level of severity for ADHD is met when the claimant's medically documented findings demonstrate marked inattention, marked impulsiveness and marked hyperactivity.

Functional Equivalence

The regulations provide that if a claimant's impairments do not meet or equal the Listings, the Commissioner will assess all functional limitations caused by claimant's impairments. 20 C.F.R. § 416.926a(a) (2014). To qualify for benefits under the functional equivalence analysis of the six domains, Claimant must have marked limitations in two domains of functioning or an extreme limitation in one domain. 20 C.F.R. § 416.926a(b). The six domains are:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for yourself; and
6. Health and physical well-being.

The Court must look at the information in the case record to determine how claimant's functioning is affected during all of her activities when the Court decides whether an impairment or combination of impairments functionally equals the Listings. Claimant's activities are everything she does at home, at school and in her community. *See* SSR 09-1p: Determining Childhood Disability Under the Functional Equivalence Rule – The "Whole Child" Approach.

"Marked" and "extreme" are defined in § 416.926a(e), as:

5

*Marked limitation.* (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

*Extreme limitation.* (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.

<u>Discussion</u>

Claimant asserts that "The Administrative Law Judge's characterization that the Plaintiff's mother's testimony is not fully credible [] is without merit" (ECF No. 11). Claimant asserts that the ALJ "summarily disregarded" the testimony of Claimant's mother.

At the hearing, Claimant's mother testified that all of Claimant's classes were in special education (Tr. at 34). Claimant was in the fourth grade at the time of the hearing. Claimant's mother stated that Claimant has an Individualized Education Program (IEP) at school and has not been held back due to the No Child Left Behind Act (Tr. at 35). Claimant's mother testified that Claimant has been diagnosed with Attention Deficit Hyperactivity Disorder (Tr. at 37). She testified that Claimant cannot read, write, tell time or do math (Tr. at 38, 46). She stated that Claimant has been "kicked off the bus because

6

she can't sit still." (*Id.*) Claimant's mother reported that this has happened on numerous occasions. (*Id.*)

Claimant's mother testified that Claimant "sees ghosts" (Tr. at 39). She stated that the day prior to the hearing, Claimant told a doctor that the ghosts were trying to kill her. (*Id.*) She testified that Claimant cannot concentrate and gave examples of homework, chores and taking care of animals[2] (Tr. at 40). She stated that Claimant will start on cleaning her room but then "gets on to something else." (*Id.*) Claimant's mother described Claimant as controlling (Tr. at 41). Claimant's mother testified that Claimant does not get along with the other children in the neighborhood. (*Id.*)

Claimant's mother testified that Claimant cannot tie her shoes, fix any food herself or bathe herself. She testified that she dresses Claimant (Tr. at 42). When asked at the hearing if Claimant seemed to "race or be hyper," Claimant's mother said yes and that Claimant is that way at home and in school (Tr. at 43). Claimant's mother testified that Claimant does not use the computer at their house and has not shown interest in using a cell phone or iPad (Tr. at 45-46). Claimant's mother stated that Claimant can't go to sleep and fidgets or wiggles. She testified that although Claimant loves cheerleading, Claimant had to stop because she couldn't "stand still and listen to what the coach was trying to do" (Tr. at 44).

Claimant's mother testified that Claimant had an appointment to see a psychiatrist two weeks after the hearing (Tr. at 46). At the close of the hearing, Claimant's counsel

---

[2] Claimant's mother testified that Claimant won't clean her room (Tr. at 40). She testified that if Claimant "starts on it she gets on to something else." (*Id.*) Claimant's mother stated "If you try to help her, she'll blow up." Claimant's mother stated that she ends up doing Claimant's homework for her. (*Id.*) Claimant's mother testified that Claimant "can't feed the dog." She stated that Claimant "likes pulling the dog's tail, his ears, his tongue." (*Id.*)

asked the ALJ if he would like Claimant to testify (Tr. at 47). The ALJ stated that he had no questions for Claimant. (*Id.*)

In the decision, the ALJ held the following:

> I have reviewed the claimant's learning disorder under Section 112.00. Listing 112.02 requires the claimant to have an abnormality in perception, cognition, affect or behavior associated with dysfunction of the brain. There is no radiological imaging or electroencephalogram testing to show any brain dysfunction. However, psychological testing by a school psychologist in January 2011 shows the claimant has difficulty reading words with consonant blends including "R" sounds. [] However, she has not repeated any grades. [] Therefore, learning disorder does not meet or equal a listing under 112.00. (Tr. at 14).
>
> \*\*\*
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained below.
>
> In terms of the claimant's alleged impairments, the claimant's mother's testimony is not fully credible. Ms. Henson[3] paints a picture of a child that is significantly hyperactive and requires medical treatment. She also reports that both she and the claimant's father have hyperactivity problems. However, no doctor has prescribed any medication for the claimant thus far. Interestingly, the only treating physician notes of record are from University Physicians and treatment has been well and sick visits only, with no mention of any hyperactivity problems. [] The only other medical reports of record are psychological consultative examination purchased by Social Security and one purchased by the Cabell County Board of Education.

If the child claimant is unable to adequately describe her symptoms, the ALJ must accept the testimony of the person most familiar with the child's condition. 20 C.F.R.

---

[3] Ms. Henson is the name of Claimant's mother. At the hearing she stated her name was Crystal Gail Thomas Henson (Tr. at 34).

416.928(a). The ALJ in the present matter questions the validity of Claimant's mother's testimony finding that it does not correlate with the record based on a lack of history of prescribed medications. The ALJ emphasizes that Claimant does not take prescribed medications. However, the ALJ pointed out earlier in the decision that Claimant's mother was "supposed to start the claimant on medication but wanted the child to see a doctor about her problems, specifically a psychiatrist" (Tr. at 16). The ALJ's decision is unclear whether his determination was based on the preference of Claimant's mother to have her daughter see a psychiatrist in lieu of taking a prescribed medicine.

## Medical Opinions

The ALJ's decision stated that on April 21, 2004, Penny Perdue, M.A., "performed a psychological evaluation of the claimant" (Tr. at 17). The ALJ stated that "She diagnosed the claimant with attention deficit/hyperactivity disorder, combined type and disruptive behavior disorder not otherwise specified. However, Ms. Perdue did not provide a mental functional assessment statement." There is no evidence in the record reflecting a psychological evaluation by Ms. Perdue of Claimant on April 21, 2004.

On June 28, 2011, Ms. Perdue evaluated Claimant regarding "Elementary to High School Mental Status" (Tr. at 230-232). Ms. Perdue diagnosed Claimant to have Attention Deficit Hyperactivity Disorder and Disruptive Behavior Disorder, not otherwise specified (NOS) (Tr. at 231). The ALJ's decision did not mention Ms. Perdue's evaluation of June 28, 2011, in his decision. Additionally, the ALJ did not state any amount of weight he gave to Ms. Perdue's opinion.

On January 10, 2012, Claimant was evaluated by Don Gossett, M.A., for the Cabell County Board of Education (Tr. at 233-246). The ALJ stated that "The claimant had a full

9

scale IQ of 100[4], noted as average and it was noted the claimant has a good attendance record at school" (Tr. at 17). The ALJ reported that "She had some difficulty with working memory, her responses were sometimes impulsive; she tended to respond quickly without considering possible alternative choices or responses, but did her best with ongoing prompting and redirection." (*Id.*) The ALJ did not include in the decision that Mr. Gossett found that Claimant has a specific learning disability that adversely impacts her education and is eligible for special education and related services" (Tr. at 235). Additionally, the ALJ did not state any amount of weight he gave to Mr. Gossett's opinion.

The ALJ's decision stated that State agency medical consultant, Paula J. Bickham, Ph.D., completed a Disability Determination Explanation form on April 28, 2012 (Tr. at 50-56). The ALJ stated that "Dr. Bickham did not indicate any limitation for caring for oneself or health and physical well-being" (Tr. at 18). The ALJ gave Dr. Brickman's opinion little weight, "as she did not have the opportunity to review all the medical evidence of record, observe the claimant at the hearing or to hearing the testimony at the hearing." (*Id.*)

The ALJ stated that psychological consultant, Rachel Adkins, M.A., completed an examination of Claimant on July 9, 2012 (Tr. at 249-252). Ms. Adkins reported that Claimant "does not take prescription medications" (Tr. at 250). However, the ALJ's decision states that "Ms. Adkins also noted the claimant was taking medication for attention deficit/hyperactivity disorder at present time" (Tr. at 18). The ALJ did not state any amount of weight he gave to Ms. Adkins' opinion.

---

[4] A full scale IQ of 100 is in the average range for general intellectual functioning. Claimant's score represents functioning in the 50th percentile (Tr. at 243).

10

On July 12, 2012, a State agency consultant, James Binder, M.D., reported that Claimant has less than marked limitation in caring for oneself. (*Id.*) The ALJ gave Dr. Binder's opinion great weight because he "had the opportunity to review all the medical evidence of record, except for [Claimant's mother's] testimony." (*Id.*)

On April 5, 2013, Rachel Miller, M.A., conducted an initial ADD evaluation of Claimant for We Care Pediatrics Group in Huntington, West Virginia (Tr. at 199-201). Ms. Miller assessed Claimant to likely have ADHD (Tr. at 200).

The ALJ referenced an examination on April 21, 2004, that is not evidence in the record. Simultaneously, the ALJ does not mention Ms. Perdue's evaluation on June 28, 2011. The ALJ also held that Ms. Adkins' examination of Claimant reported that Claimant takes prescription medications, when in fact, Ms. Adkins reported that Claimant does not take prescription medications.

If the ALJ does not analyze inconsistent evidence, a meaningful review cannot be conducted. See *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). The inconsistencies between the evidence of record and the ALJ's decision do not allow this Court to perform a meaningful review. As such, the Court finds that the ALJ's decision is not substantially supported by the evidence of the record.

## Conclusion

After careful consideration of the evidence of record, the undersigned finds that the Commissioner's decision contains findings that are not consistent with the evidence of record. Therefore, the Court finds that the ALJ's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11) is **GRANTED** to the extent Plaintiff seeks remand, **DENY** the Brief in Support of Defendant's Decision (ECF No. 12),

**REVERSE** the final decision of the Commissioner, **REMAND** this case for further proceeding pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from this Court's docket.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

Enter: September 30, 2016.

Dwane L. Tinsley
United States Magistrate Judge